B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)<br>*BC*<br>2019 MAR -7 PM 3:42<br>19-90030 CLERK<br>U.S. BANKRUPTCY CT<br>SO DIST OF CALIF |
|---|---|

| PLAINTIFFS<br><br>Gregory Kelly<br>(In Proper Person) | DEFENDANTS<br><br>Randall Mark Hickman and<br>Virginia E. Hickman |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>Gregory Kelly<br>PO Box 7132<br>Tempe, AZ 85281<br>(480) 799-9218 | ATTORNEYS (If Known) |
|---|---|

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☑ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**PARTY** (Check One Box Only)
- ☑ Debtor
- ☐ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §523, TO DENY DISCHARGE UNDER 11 U.S.C. §727, AND FOR DECLARATORY RELIEF UNDER 28 U.S.C. §2201, et seq.

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11 - Recovery of money/property - § 542 turnover of property
- ☐ 12 - Recovery of money/property - § 547 preference
- ☐ 13 - Recovery of money/property - § 548 fraudulent transfer
- ☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☑ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
- ☑ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61 - Dischargeability - § 523(a)(5), domestic support
- ☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
- ☐ 63 - Dischargeability - § 523(a)(8), student loan
- ☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71 - Injunctive relief - reinstatement of stay
- ☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☑ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01 - Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et.seq.
- ☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 300,000 |

Other Relief Sought

B1040

B1040 (Page 2) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>RANDALL MARK HICKMAN and VIRGINIA E. HICKMAN | | BANKRUPTCY CASE NO.<br><br>BK-18-07207-MM7 |
| DISTRICT IN WHICH CASE IS PENDING<br><br>SOUTHERN DISTRICT OF CALIFORNIA | DIVISIONAL OFFICE<br><br>SAN DIEGO | NAME OF JUDGE<br><br>JUDGE MARGARET M. MANN |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>MARCH 05, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>GREGORY KELLY | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B1040

Gregory Kelly
PO. Box 7132
Tempe, AZ 85281
In Proper Person
(480) 799-9218
isovegas@yahoo.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No.: BK-18-07207-MM7 |
| | ) |
| RANDALL MARK HICKMAN and | ) Chapter 7 |
| | ) |
| VIRGINIA E. HICKMAN | ) ADV. PROCEEDING NO. 19-90030 |
| | ) |
| Debtors, | ) DEPT: |
| | ) |
| _____ | ) JUDGE: |
| | ) |
| GREGORY KELLY, | ) **COMPLAINT TO DETERMINE THE** |
| | ) **DISCHARGEABILITY OF DEBT UNDER** |
| Plaintiff, | ) **11 U.S.C. §523, TO DENY DISCHARGE** |
| v. | ) **UNDER 11 U.S.C. §727, AND FOR** |
| | ) **DECLARATORY RELIEF UNDER 28** |
| RANDALL MARK HICKMAN and | ) **U.S.C. §2201, et seq.** |
| | ) |
| VIRGINIA E. HICKMAN | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

Comes now, Plaintiff Gregory Kelly ("Plaintiff"), creditor of Randall Mark Hickman

("Randy") and Virginia E. Hickman ("Virginia") and collectively ("the Hickmans" or

"Defendants"), the above named Debtors and Defendants, and alleges as follows:

## I. JURISDICTION AND VENUE

1. This is a core proceeding within the meaning of 28 U.S.C. § § 157(b)(2)(I), (J) and is

brought pursuant to 11 U.S.C. §523 and §727 for the purposes of:

ADVERSARY COMPLAINT - 1

a)  Determining that the debt owed to Plaintiff by Defendants is non-dischargeable under 11 U.S.C. §523; and

b)  Denying Defendants' Chapter 7 Discharge under 11 U.S.C. §727.

2.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b).

3.  Defendants are the Debtor's in this chapter 7 case, which was filed on December 03, 2018.

4.  The Deadline to file a complaint for determination of dischargeability is March 11, 2019, so this complaint is timely, and Plaintiff is a creditor of Defendants by virtue of the following facts:

## II.    GENERAL ALLEGATIONS

5.  On May 2, 2007, less than three weeks before he would file a California Chapter 7 Bankruptcy in this honorable Court, (BK Case 07-02628-LT7) Randy established a Nevada Corporation called "THE NATIONAL CENTER FOR AUTISM RESEARCH AND EDUCATION," ("NCARE").

6.  While NCARE was never disclosed to the Trustee at any point during Randy's 2007 California Bankruptcy (which excluded his wife Virginia), and since Defendants have never shown any evidence of NCARE filing tax returns, the alleged purpose of NCARE was to help autistic children in some capacity.

7.  On July 9, 2010, while his 2007 California Bankruptcy was ongoing, and without disclosure to the Trustee, Randy established a Nevada Corporation called "RMH INVESTMENTS GROUP INC.," ("RMH").

ADVERSARY COMPLAINT - 2

8. While the purpose of RMH is unknown, and since Defendants have never shown any evidence of RMH filing tax returns, subpoenaed bank records appear to show that RMH's purpose was to fund the operations of NCARE.

9. Sometime between November of 2011, and July of 2012, Randy went to Switzerland to:

a) Raise funding for NCARE; and

b) Establish overseas bank accounts for NCARE under different corporate entities.

10. Since Randy's legal knowledge was limited at the time, he convinced Alexander Ritchie (Esq.) ("Alexander"), to accompany him on the basis of deferred, future payment for his legal services, along with a potential position as legal counsel for NCARE.

11. Despite having over a million dollars of equity Virginia's "Self Settled" Family Trust, ("Elkins Trust") personal accounts, and assets, Randy asked that Patricia Ritchie ("Patty"), mother of Alexander, fund the majority of this venture using her credit cards and bank accounts, with an oral promise of repayment.

12. On or about July of 2012, after nine months of Randy and Alexander's venture in Switzerland, Patty had accumulated over $300,000 of debt.

13. On July 30, 2012, while he and Alexander were still in Switzerland, Randy personally signed a Promissory Note and Distribution Agreement for the money previously advanced by Patty, based on an alleged ONE MILLION DOLLAR LIQUIDATED TRUST from his son Rory Mark Hickman ("Rory Trust") from a HSBC Bank in Switzerland.

14. Randy signed this agreement on behalf of Rory Mark Hickman ("Rory"), based on Rory's inability to do so in Switzerland.

15. The "Rory Trust" either:

a) Never existed; OR

b) Randy was not authorized to borrow against it in his Promissory Note.

16. The Hickmans have not provided responsive documents to Plaintiff's Rule 2004 Subpoenas concerning this issue.

17. On August 28, 2013, Randy established a Nevada Corporation called "HICKMAN GLOBAL INITIATIVE INC.," ("HGI").

18. While the purpose of HGI is unknown, and since Defendants have never shown any evidence of RMH filing tax returns, subpoenaed bank records appear to show that HGI's purpose was to fund the operations of future companies of Randy.

19. Despite being revoked in 2013, Randy has maintained a bank account for HGI and used it as a personal bank account.

20. On October 10, 2013, Randy updated the original Promissory Note, agreeing to pay Patty all monies owed, even though the 2012 Note was not structured with regular payment agreements, interest, etc.

21. In this note, Randy claimed to live at **2273** Golden Chestnut Place, Las Vegas, NV 89135, rather than his fully homesteaded home at 11273 Golden Chestnut Place, Las Vegas, NV 89135.

22. The Hickman's made two payments on this debt in 2014 from a Elkins Trust Bank Account and then stopped making payments.

23. In November of 2014, the Elkins Family Trust, which was solely in Virginia's control at the time, netted $760,000 from the sale of Arkansas land to James Resources Inc.

24.  After this sale, the Hickmans had over ONE MILLION, FIVE HUNDRED DOLLARS ($1,500,000) OF LIQUID ASSETS between their home, personal, trust, and corporate bank accounts, and cash holdings, with less than FOUR HUNDRED THOUSAND DOLLARS ($400,000) of liabilities, (excluding Patty's loan).

25.  Rather than use this money to repay Patty, the Hickmans chose to spend it on lavish travel to Europe, jewelry, automobiles, gambling, payments to relatives, and funding for Randy's current and future business ventures.

26.  On January 13, 2015, rather than repay Patty's loan, Randy formed his fourth Nevada Corporation, "Round Table Industries," ("RTI"), which was a security firm.

27.  The Elkins Trust has functioned like a regular bank account to pay Randy and Virginia's bills, along with the funding of Randy's Corporations, since 2011.

28. From December of 2011 through November of 2016, Virginia transferred over TWO MILLION, NINE HUNDRED THOUSAND DOLLARS ($2,900,000) into the Elkins Trust, in just a single bank account.

29.  From December of 2011 through November of 2016, the Hickmans made hundreds of thousands of net cash withdraws from the Elkins Trust, without any accounting of redeposits into bank accounts.

30.  The Hickmans have maintained unaccounted cash in the hundreds of thousands of dollars since 2011.

31.  From December of 2011 through November of 2016, the Elkins Trust made hundreds of thousands of dollars of insider payments to Coradell Hickman ("Coradell"), Rory, Randy, NCARE, RMH, and HGI.

32. In 2015, the Elkins Trust purchased over $100,000 of automobiles, including one for Rory, without showing the disposition of these vehicles in their bankruptcy petition.

33. At the time of filing this complaint, the Hickmans have failed to produce Court Ordered Personal Tax Returns or Corporate Tax Returns for NCARE, RMH, and HGI, and RTI to Plaintiff.

34. At the time of filing this complaint, the Hickmans have failed to produce all of their Court Ordered Personal Bank Statements, Elkins Trust Bank Statements, and Corporate Bank Statements for NCARE, RMH, and RTI to Plaintiff.

35. Despite claiming to have no "non-exempt" assets, the Hickmans have continued their 341 meeting of creditors for this instant bankruptcy THREE times.

36. The Hickmans failed to list all of their debts and assets in this petition, including their cash holdings.

37. The Hickmans failed to list their transfers into the Elkins Trust, as well as transfers into the "Hickman Family Trust," ("Hickman Trust"), which is purportedly administered by Coradell.

38. Plaintiff alleges that Randy is the "de-facto" Administer of the Hickman Trust, and that Randy has provided the majority of funding for this trust.

39. Plaintiff alleges that the Elkins Trust and Hickman Trust are not exempt from this bankruptcy, or attachment from creditors.

40. Plaintiff alleges that the Hickmans have hundreds of thousands of dollars being held either in cash, safe deposit boxes, casino chips, undisclosed personal, family trust or corporate bank accounts, overseas bank accounts, or insiders such as Coradell, Rory and others.

41.  Plaintiff alleges that NCARE, RMH, HGI, and RTI still have bank accounts, are not permanently revoked, and are therefore undisclosed corporations with respect to the Hickman's bankruptcy petition.

42.  Plaintiff alleges that NCARE, RMH, HGI, RTI, the Elkins Trust, and the Hickman Trust have been used to hide hundreds of thousands of dollars from creditors.

43.  Plaintiff alleges that NCARE, RMH, and HGI never had any legitimate business purpose or business transactions, and were effectively used by the Hickmans for the SOLE PURPOSE of shielding personal assets from creditors.

44.  Plaintiff alleges that the Elkins Family Trust and the Hickman Family Trust are nothing more than personal bank accounts for Virginia and Randy, but have been effectively used by the Hickmans for the SOLE PURPOSE of shielding personal assets from creditors.

45.  Plaintiff alleges that while RTI was a business operating in Nevada and California, it also permitted the Hickmans to make hundreds of thousands of dollars disappear through cash withdraws, and has not filed State or Federal Tax Returns from operations.

46.  Plaintiff alleges that NCARE, RMH, and HGI have never filed State or Federal Tax returns, throughout their existence, making it nearly impossible for creditors to see where the hundreds of thousands of dollars of investments to these companies went.

47.  Patty passed away on July 10, 2017, creating the Estate of Patricia J. Ritchie ("Estate of PJR"), to administer her debts and assets, with Alexander as the executive.

48.  On October 16, 2017, the Hickmans filed Chapter 7 Bankruptcy in Nevada (Case No. 17-15525-led), but failed to list Patty's Debt in their petition.

49.  In the instant case, the Hickmans failed to list Patty's loan in their original bankruptcy petition.

50.  Randy has attempted to avoid paying Patty's loan by telling Alexander that Virginia had died, and that there was no money to pay it.

51.  Randy has attempted to avoid paying Patty's loan by telling Ian Ritchie, brother of Alexander, that Virginia had died, and that there was no money to pay it.

52.  On January 11, 2019, Alexander filed a $300,000 claim in the instant case (Claim No. 2-1).

53.  On February 03, 2019, Alexander assigned this claim to Plaintiff, and this assignment is now listed as Claim 5-1 on the Court Docket.

### III.    SPECIFIC ALLEGATIONS

54.  Plaintiff "incorporates by reference" Paragraphs 1-53, as fully incorporated herein.

55.  The Hickmans never needed Patty to finance the expenses for NCARE, based on their personal wealth in 2011, and never had any intention of repaying her.

56.  The Hickmans could have easily repaid Patty's loan in November of 2014, based on their personal wealth in 2014, but CHOSE NOT TO.

57.  Randy's false oaths to Alexander and Ian about Virginia's death constitute an intention to deceive them and the Estate of PJR from collecting Patty's loan.

58.  The Hickmans failure to list Patty's loan to the Estate of PJR, in two separate bankruptcies is evidence of an intention to deceive or fraud.

59. As recently as October of 2018, Defendants signed a Confession of Judgment to Plaintiff for $49,385.25 in Clark County District Court, demonstrating their undisclosed assets and ability to pay debts.

60. As recently as October of 2018, Defendants paid thousands of dollars to attorney Bruce Jaques to settle the aforementioned Clark County District Court case.

61. Defendants filed bankruptcy in the instant case, only after Randy was non-compliant with a Nevada District Court Order to produce financial documents by November 29, 2018.

62. As of the time of this Complaint, the Hickmans are a minimum of 45 days late in providing Subpoena Information to Plaintiff, even after having been Court Ordered to provide this information on February 28, 2019.

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(To Determine Non-Dischargeability For Obtaining Funds Through
Actual Fraud And False Pretenses under 11 U.S.C. § 523(a)(2)(A))**

63. Plaintiff repeats and re-alleges Paragraphs 1-62, as fully incorporated herein.

64. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a),1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by –

**(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;**

65. Rory was clearly an insider in this transaction for the purposes of this section, even if he had no knowledge of this transaction.

66. The "Rory Trust" either:

a) Never existed; OR

b) Randy was not authorized to borrow against it in his Promissory Note.

67. Randy's July 30, 2012 Promissory Note and Distribution Agreement, along with his October 10, 2013 Re-Affirmation Agreement to Patty constituted legal representations ("contracts").

68. At the time these contracts were made, Randy knew that:

The "Rory Trust" either:

a) Never existed; OR

b) Randy was not authorized to borrow against it in his Promissory Note; OR

c) Randy had no intention of ever repaying Patty in full.

69. Randy and Virginia were more than financially capable of repaying Patty in November of 2014, BUT CHOSE NOT TO.

70. At the time of signing the 2012 and 2013 Notes, Randy did not tell Patty that the Rory Trust was fabricated, or that he didn't have any right to make payments from it.

71. Randy intended to deceive Patty through the 2012 and 2013 Notes, to prevent her from suing him at a time where he and Virginia had more than enough money to pay her loan.

72. Patty justifiably relied on Randy's 2012 and 2013 Notes, and his claims of being unable to repay her loan, to prevent her from suing him for collection, at a time where he and Virginia had more than enough money to pay her loan.

73.  Alexander and Ian justifiably relied on Randy's 2012 and 2013 Notes, his claims of being unable to repay Patty's loan, and claims of Virginia's death, to prevent them from suing him for collection, at a time where Randy and Virginia had more than enough money to pay her loan.

74.  The Estate of PJR justifiably relied on Randy's 2012 and 2013 Notes, his claims of being unable to repay Patty's loan, and claims of Virginia's death, to prevent them from suing him for collection, at a time where he and Virginia had more than enough money to pay her loan.

75.  The Estate of PJR has sustained damages of $300,000 as a result of Randy's false pretenses, false representations, or actual fraud, and these damages are non-dischargeable from the instant bankruptcy petition of Defendants.

76.  The Estate of PJR has assigned this claim in perpetuity to Plaintiff, for valuable consideration, and Plaintiff is therefore the damaged party to this Cause of Action.

77.  Plaintiff has incurred substantial costs as a result of Defendant's false pretenses, false representations, or actual fraud, and is therefore entitled to recover these costs from Defendants.

78.  Defendants have committed their misconduct with malice, oppression, and fraud, entitling Plaintiff to punitive and/or exemplary damages.

### SECOND CAUSE OF ACTION
**(To Determine Non-Dischargeability For False
Written Statements under 11 U.S.C. § 523(a)(2)(B))**

79.  Plaintiff repeats and re-alleges Paragraphs 1-78, as fully incorporated herein.

80.  Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a),1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of

credit, to the extent obtained by –

**(B) use of a statement in writing —**

    **(i)** that is materially false;

    **(ii)** respecting the debtor's or an insider's financial condition;

    **(iii)** on which the creditor to whom the debtor is liable for such money,

    property, services, or credit reasonably relied;

    **(iv)** that the debtor caused to be made or published with intent to deceive;

81. Rory was clearly an insider in this transaction for the purposes of this section, even if he had no knowledge of this transaction.

82. The "**Rory Trust**" either:

a) Never existed; **OR**

b) Randy was not authorized to borrow against it in his Promissory Note;

83. At the time of signing the 2012 Note, Randy did not tell Patty that the Rory Trust was fabricated, or that he didn't have any right to make payments from it.

84. Randy intended to deceive Patty with the 2012 and 2013 Notes, to prevent her from suing him at a time where he and Virginia had more than enough money to pay her loan.

85. Patty justifiably relied on Randy's 2012 and 2013 Notes, and his ability to repay her loan.

86. Alexander and Ian justifiably relied on Randy's 2012 and 2013 Notes, along with Randy's claim of Virginia's death, to prevent them from suing him for collection, at a time where he and Virginia had more than enough money to pay her loan.

ADVERSARY COMPLAINT - 12

87. The Estate of PJR justifiably relied on Randy's 2012 and 2013 Notes, along with Randy's claim of Virginia's death to prevent them from suing him for collection, at a time where he and Virginia had more than enough money to pay her loan.

88. The Estate of PJR has sustained damages of $300,000 as a result of Randy's false financial statement with the Rory Note, and these damages are non-dischargeable from the instant bankruptcy petition of Defendants.

89. The Estate of PJR has assigned this claim in perpetuity to Plaintiff, for valuable consideration, and Plaintiff is therefore the damaged party to this Cause of Action.

90. Plaintiff has incurred substantial costs as a result of Defendant's false financial statement, and is therefore entitled to recover these costs from Defendants.

91. Defendants have committed their misconduct with malice, oppression, and fraud, entitling Plaintiff to punitive and/or exemplary damages.

### THIRD CAUSE OF ACTION
### (Non-Dischargeability For Concealment of Property Under 11 U.S.C. § 727(a)(2)(A))

92. Plaintiff repeats and re-alleges Paragraphs 1-91, as fully incorporated herein.

93. Bankruptcy Code § 727(a)(2)(A) provides, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless —

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

ADVERSARY COMPLAINT - 13

94. The Defendants have made hundreds of thousands of dollars of cash withdraws since 2011, for which there is no final accounting.

95. The Defendants have made hundreds of thousands of transfers to corporate entities of Randy since 2011, which never filed State or Federal Tax Returns, and without any final accounting for these funds.

96. The Defendants have made hundreds of thousands of purchases in automobiles, jewelry, and other consumer goods since 2015, without disclosing the final accounting of these assets in their instant Bankruptcy Petition.

97. Since 2011, the Defendants have made over TWO MILLION NINE HUNDRED THOUSAND DOLLARS ($2,900,000) of transfers to the Elkins Trust, and Hickman Trust, without any final accounting for these assets.

98. As recently as October of 2018, Defendants agreed to pay an unrelated $49,385.25 Judgment to Plaintiff, after spending thousands of dollars on an attorney.

99. Defendants would not have taken these actions if they were truly indigent, and have failed to disclose the source of their payments to the attorney.

100. Less than two months later, rather than disclose their true assets and financial condition under Court Order from the Nevada District Court, Defendants chose to file Chapter 7 Bankruptcy for the second time in two years.

101. On the basis of Defendant's intentional failure to disclose their assets, their bankruptcy should be dismissed.

//
//
//
//

### FOURTH CAUSE OF ACTION
#### (Non-Dischargeability For Concealment Of, Or
#### Failure to Keep Records Under 11 U.S.C. §727 (a)(3)

102.  Plaintiff repeats and re-alleges Paragraphs 1-101, as fully incorporated herein.

103.  Bankruptcy Code § § 727(a)(3) provides that:

> (a) The court shall grant the debtor a discharge, unless —
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

104.  Defendants have a long history of concealing records, dating back to Randy's 2007 Bankruptcy in 2007 (in this Honorable Court).

105.  In that case, Randy eventually agreed to a non-discharge, based in part, on his concealment of records, and three Adversary Complaints (including the Trustee).

106.  In 2017, after filing bankruptcy in Nevada, Defendants chose to sell their fully homesteaded $700,000 home in Las Vegas, rather than produce Rule 2004 Subpoenaed documents to Plaintiff.

107.  In late November of 2018, rather than produce financial documents under Court Order from the Nevada District Court, Randy again chose to file Bankruptcy, to prevent his disclosure of financial information.

108.  In the instant Bankruptcy case, Defendants have continued their 341 Meeting of Creditors THREE times, despite claims of indigence.

109.  In the instant Bankruptcy Case, Defendants were required to deliver financial documents via Subpoenas by January 18, 2019 (Dkt. Nos. 11 and 12).

110. Rather than comply with the subpoena, Defendants chose to have their attorney, file a frivolous, and legally infirm "Motion to Quash," for the sole purpose of thwarting Plaintiff's Adversary Complaints.

111. This Honorable Court upheld Plaintiff's subpoenas on February 28, 2019.

112. At the time of filing this Complaint, Defendants and their attorney have failed to produce any of the subpoenaed documents which were not already disclosed to them by Plaintiff.

113. At the time of filing this Complaint, Defendants refuse to tell Plaintiff when they will comply with their Subpoenas.

114. At the time of filing this Complaint, Defendants refuse to provide written acknowledgment that they are non-compliant with Court Ordered Subpoenas.

115. At the time of filing this Complaint, Defendants are attempting continue their Rule 2004 Examination on March 08, 2019.

116. On the basis of Defendants' long history of refusing to provide financial documents, and refusal to follow Court Orders in different jurisdictions, their bankruptcy should be dismissed.

### FIFTH CAUSE OF ACTION
**(Non-Dischargeability For False Oaths**
**or Accounts Under 11 U.S.C. §727 (a)(4)(A)**

117. Plaintiff repeats and re-alleges Paragraphs 1-116, as fully incorporated herein.

118. Bankruptcy Code § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless —

(4) the debtor knowingly and fraudulently, in or in connection with the case —

ADVERSARY COMPLAINT - 16

### (A) made a false oath or account

119.  Defendants' instant Bankruptcy Petition was rife with false oaths and accounts from its initial filing, and despite two amendments, can never be cured.

120.  At the time of their bankruptcy filing, Defendants were fully aware that they were not listing their proper assets and debts, just as they did in their 2017 Nevada Bankruptcy and 2007 California Bankruptcy (Randy only).

121.  Despite years of subpoenaed bank records obtained by Plaintiff, Defendants have continued to maintain, in two different Bankruptcy filings, that they survive on a mere $1,460 of monthly Social Security Income, rather than the hundreds of thousands of dollars in cash they withdrew from the Elkins Trust, Randy's Corporations, and Virginia's personal accounts from 2011-2017.

122.  Plaintiff's alleges that Defendants are in control of hundreds of thousands of cash withdraws since 2011, which were not disclosed on their petition.

123. Plaintiff's alleges that Defendants have control of over a hundred thousand dollars of assets, which were not disclosed on their petition.

124.  Plaintiff alleges that Defendants have cash, casino chips, safe deposit boxes, overseas bank accounts, corporate bank accounts, or third parties holding assets, which were not disclosed on their petition.

125.  Plaintiff alleges that the Elkins Trust, and Hickman Trust, have received over TWO MILLION NINE HUNDRED THOUSAND ($2,900,000) of transfers from Defendants since 2011, which were not disclosed on their petition.

126. Plaintiff alleges that Defendants have failed to disclose their true debts and assets, and only do so when confronted with evidence that they have attempted to hide from the Bankruptcy Court.

127. Plaintiff alleges that Defendants have bank accounts, either personal, trust, or corporate, which were not disclosed on their petition.

128. Plaintiff alleges that Dkt. No. 1, page 6, Part 6, line 19 is false, as it vastly understates Defendants' assets, that Defendants were aware of this at the time of filing their petition, and Defendants intentionally filed a false petition.

129. Plaintiff alleges that Dkt. No. 1, page 6, Part 6, line 20 is false, as it vastly understates Defendants' liabilities, that Defendants were aware of this at the time of filing their petition, and Defendants intentionally filed a false petition.

130. Plaintiff alleges that Defendants were well aware of their $300,000 Debt to Patty, but chose not to list it in their 2017 or 2018 Chapter 7 Bankruptcies, because they didn't anticipate a collection action.

131. Plaintiff alleges that Dkt. No. 1, page 8, Part 1, lines 1b and 1c are false, as they vastly understate Defendants' assets.

132. Plaintiff alleges that Dkt. No. 1, page 8, Part 2, line 3b is false, as it vastly understates Defendants' liabilities.

133. Plaintiff alleges that Dkt. No. 1, page 8, Part 3, line 5 is false, as it vastly understates Defendants' monthly expenses.

134. Plaintiff alleges that Dkt. No. 1, page 8, Part 7, line 5 is false, as Defendant's liabilities were mostly debts originating from business loans, and not consumer debts.

135.  Plaintiff further alleges that Defendants intentionally misrepresented their debt to prevent discovery of Randy's four revoked Corporations (NCARE, RMH, HGI and RTI).

136.  Plaintiff alleges that Dkt. No. 1, page 10, Part 2, line 3 is false, as Defendants own one or more automobiles, currently titled to a third Party.

137. Plaintiff alleges that Dkt. No. 1, page 10, Part 3, line 6 is false, as the value of Defendants' household furnishings is worth more than $ 3,000.

138.  Plaintiff alleges that Dkt. No. 1, pages 10/11, Part 3, line 7 is false, as the value of Defendants' electronics is worth more than $ 300.

139.  Plaintiff alleges that Dkt. No. 1, page 11, Part 3, line 12 is false, as the value of Defendants' jewelry is worth more than $ 500.

140.  Plaintiff alleges that Dkt. No. 1, page 12, Part 4, line 17 is false, and that Defendants have undisclosed bank accounts not listed on their Bankruptcy Petition.

141.  Plaintiff alleges that Dkt. No. 1, page 12, Part 4, line 25 is false, and that Defendants are the administrators, de-facto Trustees, and beneficiaries of the Elkins Trust and Hickman Trust.

142.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, line 30 is false, and that Defendants are owed money by third parties.

143.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, line 32 is false, and that Defendants are the beneficiaries of the Elkins Trust and Hickman Trust.

144.  Plaintiff further alleges that Defendants have received hundreds of thousands of dollars in distributions from the Elkins Trust and Hickman Trust, and deliberately falsified their bankruptcy petition.

ADVERSARY COMPLAINT - 19

145.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, line 33 is false, and that Defendants have no legal claims against Gregory Kelly (Plaintiff).

146.  Plaintiff further alleges that Dkt. No. 1, page 13, Part 4, line 33 mentions Plaintiff's name purely for the purposes of intimidation and harassment.

147.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, lines 35 and 36 are false, and that Defendants have not listed all of their assets.

148.  Plaintiff alleges that Dkt. No. 1, page 14, Part 5, lines 37, 38, 39, 40, 41, 42, 43, 44, and 45 are false, and that Defendants have undisclosed assets from NCARE, RMH, HGI, and RTI.

149.  Plaintiff further alleges that NCARE, RMH, HGI, and RTI have not been permanently revoked by the State of Nevada, have never filed final tax returns, and should have been properly disclosed in Defendants' Bankruptcy Petition as assets.

150.  Plaintiff alleges that Dkt. No. 1, page 15, Part 8, lines 56, 57, 58, 59, 61, 62, and 63 are false, and that Defendants have not disclosed all of their assets.

151.  Plaintiff alleges that Dkt. No. 1, pages 16 and 17 (Schedule C) are false with respect to Defendants' alleged possessions, bank accounts, and Claims against Plaintiff on line 2.

152.  Plaintiff alleges that Dkt. No. 1, page 22, Part 2, line 4.8 is false, and that the correct amount owed to Gregory Kelly, (via docketed judgment) is $49,385.25.

153.  Plaintiff alleges that Dkt. No. 1, page 22, Part 4, lines 6i and 6j are false, and that the Defendants owe significantly more money than listed on their petition.

154.  Plaintiff alleges that Dkt. No. 1, page 24, line 2 is false, as Defendants clearly lived in a Community Property State at the time of filing their petition, and for many years earlier.

155.  Plaintiff alleges that Dkt. No. 1, pages 27 – 28, (Schedule J) is false, and that Defendants have significantly higher monthly expenses than listed in their petition.

156.  Plaintiff alleges that Dkt. No. 1, page 31, Part 3, line 6 is false, as Defendants' debts were primarily business debts and not consumer debts.

157.  Plaintiff further alleges that Dkt. No. 1, page 31, Part 3, line 6 is false, because Defendants, or a third party working on their behalf, paid more than $ 600 to attorney Bruce D. Jaques and Move 4 Less Storage in Nevada within 90 days of filing their bankruptcy petition.

158.  Plaintiff further alleges that Defendants have refused to provide documentation of these transactions to Plaintiff, despite Court Ordered Subpoenas.

159.  Plaintiff alleges that Dkt. No. 1, page 32, Part 5, line 13 is false, and that Defendants have gifted assets of $ 600 or more within two years of filing bankruptcy.

160.  Plaintiff alleges that Dkt. No. 1, page 33, Part 7, line 16 is false, as Defendants paid $ 15,000 to the Dias Law Group in April of 2018 for services related to their 2017 Nevada Bankruptcy.

161.  Plaintiff alleges that Dkt. No. 1, page 33, Part 7, line 17 is false, as Defendants paid thousands of dollars to attorney Bruce D. Jaques in 2018 to negotiate a $49,385.25 Confession of Judgment to Plaintiff in Clark County District Court Case No. A-18-779920-C.

162.  Plaintiff further alleges that Defendants claimed to have the ability to pay this Judgment by October 10, 2018, which is in stark contrast to their instant bankruptcy petition.

163.  Plaintiff alleges that Dkt. No. 1, page 33, Part 7, line 18 is false, as Defendants have transferred property to Coradell and Rory within 2 years of filing bankruptcy.

ADVERSARY COMPLAINT - 21

164. Plaintiff alleges that Dkt. No. 1, page 34, Part 7, line 19 is false, as Defendants have transferred over TWO MILLION, NINE HUNDRED THOUSAND DOLLARS ($2,900,000) to the Elkins Trust within 10 years of filing bankruptcy.

165. Plaintiff alleges that Dkt. No. 1, page 34, Part 8, line 21 is false, and that Defendants have undisclosed safe deposit boxes, being held in the name of third parties or trusts.

166. Plaintiff alleges that Dkt. No. 1, page 35, Part 11, line 27 is false, and that Defendants should have listed NCARE, RMH, and HGI in addition to RTI.

### SIXTH CAUSE OF ACTION
**(Declaratory Relief Under 28 U.S.C. § 2201, et seq.)**

167. Plaintiff repeats and re-alleges Paragraphs 1-166, as fully incorporated herein.

168. As properly alleged in Paragraphs 1-166, Defendants are not entitled to a Chapter 7 discharge of any debts, and certainly not entitled to discharge the debt to Plaintiff under 11 U.S.C. §523 (a)(2)(A) and (B).

169. Defendants dispute these contentions, despite the overwhelming evidence against them.

170. Plaintiff is entitled to a declaratory judgment against Defendants under 28 U.S.C. § 2201, et seq., finding, concluding, and adjudging that Plaintiff is entitled to all prayers for relief.

### V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. With respect to the First Cause of Action, an Order that Defendants' indebtedness to Plaintiff, in the amount of $300,000 constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523 (a)(2)(A)

ADVERSARY COMPLAINT - 22

2.  With respect to the Second Cause of Action, an Order that Defendants' indebtedness to Plaintiff, in the amount of $300,000 constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523 (a)(2)(B).

3.  With respect to the Third Cause of Action, an Order that Defendants' bankruptcy is non-dischargeable pursuant to 11 U.S.C. §727 (a)(2)(A).

4.  With respect to the Fourth Cause of Action, an Order that Defendants' bankruptcy is non-dischargeable pursuant to 11 U.S.C. §727 (a)(3).

5.  With respect to the Fifth Cause of Action, an Order that Defendants' bankruptcy is non-dischargeable pursuant to 11 U.S.C. §727 (a)(4)(A).

6.  With respect to the Sixth Cause of Action, an Order entering judgment for Plaintiff and granting declaratory relief under 28 U.S.C. § 2201, et seq., including, without limitation, that Plaintiff's $300,000 Claim is non-dischargeable.

7.  An Order granting reasonable attorney fees, costs, expenses, and any other equitable relief that the Court deems just and proper.

Dated this 5th day of March, 2019.

PREPARED AND SUBMITTED

BY:

Gregory Kelly
PO. Box 7132
Tempe, AZ 85281
(480) 799-9218
In Proper Person

ADVERSARY COMPLAINT - 23